OHIO STATE BAR ASSOCIATION *v.* KAHN.

(No. D. D. 74-3—Decided October 16, 1974.)

16

*Mr. Thomas E. Palmer, Mr. Edwin C. Johnston, Mr. John R. Welch* and *Mr. Albert L. Bell,* for relator.

*Mr. Taliesin E. Evans* and *Mr. Norman S. Kahn,* for respondent.

*Per Curiam.* Upon examination of the record, we conclude that the findings of the Board of Commissioners on Grievances and Discipline are fully supported by the evidence.

Count one of the complaint alleged that respondent commingled trust property with his own funds, and wrongfully failed to account, pay and deliver said funds to his client when their return was sought. Evidence adduced by the board indicated that Carmax Industries, Inc., retained respondent to process certain oil and gas leases. Pursuant to a detailed agreement of escrow and trust, a draft in the amount of $2,604 was entrusted to respondent, who deposited the funds in his personal checking account. When the plan to process the oil and gas leases fell through, Carmax sent respondent a series of letters and telegrams, seeking return of the funds.

Respondent failed to reply to such requests, and Carmax found it necessary to retain counsel and file suit in the Court of Common Pleas to obtain the return of its funds. Only then did respondent settle with Carmax, paying the full $2,604, plus an additional $500 in what were apparently punitive damages.

Based upon such findings of fact, the board concluded that respondent "commingled trust funds with his personal funds in violation of Canon 11 of the Canons of Professional Ethics, Rule XVIII, Section (5) (a) of the Rules of Practice then in effect, and DR 9-102(A) and (B) (3) of the Code of Professional Rsponsibility." The board concluded further that respondent "failed to account, pay or deliver trust funds in violation of Canon 11 and DR 9-102(B) (3) aforesaid."

Count two of the complaint accused respondent of failing to preserve the identity of funds and property of a client. The board found that respondent, while represent-

ing George E. Todd individually and as executor for the estate of Todd's deceased wife, received $31,000 in settlement of personal injury claims. The settlement checks were deposited in respondent's personal checking account, and the balance, after deduction of attorney's fees, loaned to the Cambridge Home Improvement Company, Inc. Respondent accepted an unsecured note, payable to himself as agent for Todd, in return.

The testimony is in conflict as to the circumstances surrounding this loan, as no written agreement between respondent and Todd was executed. Respondent contends that Todd authorized his investing the funds for a short period of time. The evidence indicates, however, that Todd desired to place the settlement proceeds in a passbook savings account, and that respondent was aware of such desire. Todd was never informed as to the nature of the investment, nor the existence of the note. Further, respondent made no effort to check the security of the investment, nor to obtain authority from the Probate Court to make the investment.

When Todd's repeated requests for payment of the settlement proceeds proved fruitless, counsel was retained, and suit filed in the Probate Court. The complaint was withdrawn only after respondent reobtained the invested funds; and paid the full amount, plus interest, to Todd.

The board concluded that respondent's handling of funds constituted a violation of DR 9-102(A) and (B) of the Code of Professional Responsibility. Such disciplinary rules require, among other things, the deposit of a client's funds in a separate and identifiable bank account, the maintenance of records and rendering of appropriate accounts to a client, and the payment or delivery to a client, as requested by the client, of funds in his possession which the client is entitled to receive.

Counts three, four, five, seven and eight involve allegations that respondent neglected the affairs of his clients, and failed to properly account for and preserve the identity of funds.

As to count three, the evidence indicates that respond-

18

ent was appointed guardian of the person and estate of Mary Anker on August 21, 1958. From that date until her death in 1963, respondent failed to file any accountings, and still had not closed the guardianship at the time of the board's hearing. As to count four, the evidence indicates that respondent was appointed guardian of the person and estate of Harry Williams in 1959. The ward died in 1961. Though respondent filed a final account in 1971, that account had not been approved by the Probate Court as of the date of the board's hearing. As to both counts, the board found that "the final account had not been approved because of the failure by respondent to properly account for funds coming into his hands." The board also found that the Probate Judge of Guernsey County had, in 1972, suspended the right of respondent to file papers in the Probate Court.

As to count five, the board found that respondent was appointed administrator of the estate of Fred McGee in 1958, but filed his first and final account in 1973, after the present proceedings had been initiated.

As to count seven, the board found that respondent was appointed ancillary administrator of the estate of Nellie Turner in September 1959. A parcel of real estate subject to said administration was transferred in November 1959. The only accounting in the estate was filed in 1973, and had not been approved as of the date of the board's hearing.

As to count eight, the board found that respondent was appointed guardian of the person and estate of Edith Lyle Peterson in February 1959. The ward died in 1967. During the ward's lifetime, $4,000 came into the hands of respondent as guardian, but the only attempted accounting, an inventory filed in 1972, failed to adequately account for the funds.

Having made such findings of fact, the board concluded, as to counts three, four, five, seven and eight, that respondent "clearly neglected the affairs of his client in violation of Canons 29 and 32 of the Canons of Professional Ethics." The board concluded further that respondent

"violated Canon 11 by failing to properly account and he violated Disciplinary Rules 9-102(A) and (B) by failing to preserve the identity of funds."

Count six alleges, among other things, that respondent neglected the affairs of his client, failed to promptly account for trust property coming into his possession, and failed to preserve the identity of funds of his client and to account for the same.

The board found that respondent was designated attorney for the guardian of Noah H. Johnson on August 6, 1958, and, after Johnson's death in 1960, respondent was appointed administrator of Johnson's estate. In 1964, respondent petitioned the Probate Court for permission to sell certain real estate, but despite receiving a check for the purchase price, which he deposited in his personal checking account, no deed has ever been executed. The board said that "these funds were later returned to the prospective purchaser but he has continually sought and been promised a deed so that he can convey to a subsequent purchaser under a land contract. The subsequent purchaser apparently has improved the premises and has been occupying them, rent free, for years."

No real estate taxes have been paid on the property since 1958, and the estate has never been closed. Respondent has alleged title problems, but has made no effort to rectify them.

The board concluded that "respondent violated Canons 29 and 32 by neglecting the affairs of his client. He failed to diligently pursue a legal matter entrusted to him contrary to Disciplinary Rule 6-101(A) (3) and he did not properly segregate funds in violation of Canon 11 and Disciplinary Rules 9-102(A) and (B)."

In view of the foregoing, this court concludes that respondent should be, and is, permanently disbarred from the practice of law.

*Judgment accordingly.*

O'Neill, C. J., Herbert, Corrigan, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.